325 So.2d 540
**Kelvin W. RICHARDSON**

v.

**STATE.**

**6 Div. 998.**

Court of Criminal Appeals of Alabama.

Nov. 4, 1975.

Rehearing Denied Dec. 9, 1975.

Robert R. Bryan, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery and Quentin Q. Brown, Jr., Birmingham, for the State.

HARRIS, Judge.

Appellant was tried and convicted of assault with intent to murder. The court sentenced him to fifteen years imprisonment in the penitentiary. Prior to arraignment, appellant was found to be indigent, and counsel was appointed to represent him. He pleaded not guilty. After conviction he gave notice of appeal and was furnished a free transcript. New counsel represents him on this appeal.

The testimony was in sharp conflict. The testimony for the state tended to show that appellant made an unprovoked attack on him and shot him one time in the back as he was running toward his home. Appellant claims that he shot the victim as he was advancing on him, but he did not see a weapon of any kind in the hands of the victim.

Omitting the formal parts, the indictment reads as follows:

"The Grand Jury of said County, charges that before finding of this indictment Kelvin Richardson whose name to the Grand Jury is otherwise unknown, unlawfully and with malice aforethought, did assault Ike Roberson, III with the intent to murder him, against the peace and dignity of the State of Alabama."

Ike Robinson, the victim, testified that he and his brother went to a nightclub around midnight on June 13, 1974, known as the Blue Gardenia. They stayed on the inside of the club about twenty minutes watching people dancing. They did not have anything to drink. Ike decided to walk outside and met appellant coming in the club. Appellant stopped him and asked him if he was ready to pay him and Ike said no and walked out of the club. About four or five minutes later appellant came out and walked up to Ike and said, "Hey, man, you been owing me a long time." Ike said, "Yeah, I'm going to pay you man." There was some more conversation and appellant told Ike not to put his hand in his face, and appellant pulled an automatic pistol out of his pants pocket. Someone said, "Hey, man, don't do that." Appellant then put his pistol back in his pocket and walked down the street.

Ike lived about a block from the club and he parked his car at his aunt's home who lived nearby. His brother came out of the club and asked him what happened and Ike said nothing and his brother reentered the club. Two minutes later his brother came out of the club and asked if he was ready to go home and Ike said, "Yes." They started walking down the street and came upon appellant and two companions standing on the side of the street. Appellant was on one side of the street and his companions were standing across the street. Ike and his brother walked past these three men.

From the record:

"Q. Okay. Was your brother with you at that time?

"A. Yes, sir.

"Q. What if anything did you and your brother do?

"A. My brother asked me, said something, asked me what he say to me. I told him to keep walking, and pass on by him.

"Q. You passed on by him?

"A. Yes.

"Q. Now, what if anything happened as you came down the street? Tell the jury what occurred.

"A. As we passed by him he called me, kept walking. Called me again, stopped, turned around and he raised up a gun. My brother had walked side of the road. He said, 'hold it, man, don't do that.' He, you know, turned around, started shooting at him. Then turned around and started shooting at me. And I started running and he shot me in the back.

"Q. Let me ask you this. You got shot in the back?

"A. Yes."

Ike further testified that neither he nor his brother were armed with any kind of a weapon—pistol, knife, club, etc. He stated appellant shot his brother twice and shot him one time and the bullet went through his body. His brother ran into the yard of a house nearby and fell. He subsequently died from the gunshot wounds fired by appellant. Ike ran to his home and his uncle carried him to a hospital.

Appellant was tried and convicted for killing Ike's brother and his case was affirmed by this court on October 1, 1975, without an opinion.

Appellant's version of the shooting was entirely different. He testified in substance as follows:

"In the early morning hours of June 14, 1974, a shooting occurred which resulted in the wounding of Ike Robinson and his

brother by the Appellant. The dispute arose as the two parties, one composed of the Appellant and his two companions and the other consisting of the two brothers, were leaving a night club. A few minutes earlier, the Appellant had requested the payment of a five dollar debt which Robinson acknowledged as valid but refused to pay at that time. Due to Robinson's alleged antagonistic behavior as he 'began waving his finger' in the Appellant's face, the Appellant pulled out a pistol admonishing him to refrain and back away which Robinson did. Shortly thereafter, the Appellant requested his companions, Robert Pearson and Arthur Richardson, to get Pearson's car and meet him at the end of the street to leave. Following Robinson's and Appellant's verbal exchanges, the brother of Robinson, Robert Hood, asked what had happened to which Robinson testified he said 'nothing'. Hood entered the club and exited about four minutes later asking Robinson if he was ready to go, to which Robinson responded in the affirmative. A few minutes later, the Appellant noticed Robinson and Hood walking up behind him quickly and proceeded to pass on the walk. The Appellant called to Robinson at which point the accounts differ. Robinson claims he did not answer, but his brother did, and the Appellant started shooting.

The Appellant's account, corroborated by the testimony of his two companions, was that Robinson's brother, Hood, turned around holding a gun which he was pointing at the three, and the Appellant reacted in self-defense, shooting at his assailant and then at Robinson who was coming after him. The Appellant contended he did not know which of the two shots fired hit Hood, but since he later learned Robinson was hit in the back, he must have been hit running away. Immediately after the shooting, the Appellant ran home with his two companions returning by car. Shortly after learning the next morning that he

was being sought by the authorities, the Appellant voluntarily surrendered himself to the Sheriff's Department of Jefferson County."

There was no motion for a new trial; there was no request for the affirmative charge; no exceptions were reserved to the court's oral charge to the jury, and there were no adverse rulings on the admission of evidence which contained any merit.

▪ Appellant made a motion to exclude the state's evidence on the ground that the state failed to make out a prima facie case. This motion was overruled and denied, and we think rightly so. In *Young v. State*, 283 Ala. 676, 220 So.2d 843, the rule applicable is stated as follows:

"Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the state's evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error. *Drummond v. State,* 37 Ala.App. 308, 67 So.2d 280; *Wade v. State*, 24 Ala.App. 176, 132 So. 71."

Conflicting evidence always presents a question for the jury as to the guilt of the defendant unless the evidence palpably fails to make out a prima facie case. *Morris v. State*, 47 Ala.App. 132, 251 So.2d 629; *Irons v. State*, 42 Ala.App. 349, 165 So.2d 125; *Bradford v. State*, 35 Ala.App. 407, 47 So.2d 599; *Jones v. State*, 54 Ala.App. 251, 307 So.2d 59.

The evidence was more than ample to make out a prima facie case of guilt of the defendant and there is no warrant for this court to disturb the verdict of the jury.

▪ Appellant contends that the court did not charge the jury that the verdict must be unanimous. This contention is not

supported by the record. We quote the following excerpt from the oral charge:

> "That's a matter for each and every one of you to determine, because it will take a vote of all twelve of you to convict."

As we have pointed out no exceptions were reserved to the oral charge of the court. Numerous cases decided by the appellate courts of this state establish the rule that, in the absence of an exception to the court's oral charge, there is nothing presented for review. *Cox v. State*, 280 Ala. 318, 193 So.2d 759.

We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none. Accordingly, the judgment of conviction must be, and is, affirmed.

Affirmed.

All the Judges concur.