Appellant was convicted of burglary in the second degree and sentenced to seven years imprisonment.
There was no eyewitness to the alleged burglary, but the undisputed evidence shows beyond question that during the afternoon of February 14, 1977, the dwelling house of Fred Primm and his wife at 1517 Sixth Place South, Phenix City, was burglarized and a portable television set was taken therefrom.
Charlie Edmunds, a school bus driver for the Mother of Mary Mission, testified that, on Sixth Place South, while he was driving the bus between 3:30 and 3:35 P.M. on February 14, 1977, he saw appellant standing beside a yellow Mercury which was parked on the side of the road with its hood and door of the trunk raised. He told the court and jury that the distance between the automobile and the Primms' house "would be from where you [defendant's attorney] are sitting to the back of the court room." He said that the distance between the automobile and any other house was "a block or block and a half." He stopped the bus "five, ten or fifteen seconds" to let some children out a short distance from where the automobile was parked; no person other than defendant was at the automobile at the time. As he started the bus in motion, he saw another person walk from a wooded area carrying an object and place it in the trunk. Appellant then closed the hood and trunk door and got in the car. The wooded area from which the other person walked was right next to the residence of Mr. and Mrs. Primm. According to the witness, appellant was merely standing beside the automobile until the other person approached the automobile from the woods; the witness did not see appellant look under the hood. He then passed the automobile with his bus; looked back and obtained the number of the license tag on the automobile and wrote it down.
Officer John Wilson testified that on the evening of the burglary, Mr. Edmunds came to Mr. Wilson's house, "explained to me about something he had witnessed that looked unusual and he gave me information concerning the time he was driving the school bus," including the tag number and description of the automobile and "the circumstances that he deemed suspicious." He found that the automobile was registered to defendant, learned that a burglary had taken place and then turned the matter "over to the detectives."
Defendant was arrested for the crime on February 19. There is no evidence as to what he said, if anything, at the time of his arrest, but evidence was introduced as to what he said to an officer sometime that day and what he said to another officer five days thereafter.
Wesley F. Butler, an investigator with the Russell County Sheriff's Department, testified that on February 19, defendant voluntarily came to him at the Sheriff's Department, told the officer that he had been charged with a burglary, and that he was not guilty. He said he "had not been involved" but he knew where the television set was and would direct the officer to its location. They went together to an apartment building in Columbus, Georgia, and defendant pointed out to the officer where the television set was at the time. They returned to Phenix City, where this information was reported to the Police Department of Phenix City. The evidence shows that a detective then obtained a warrant for the seizure of the television set and by virtue of the warrant recovered the set. Officer Butler also testified that on the occasion of his talking with defendant and going with defendant to Columbus on February 19, 1977, defendant told him that he had been "flagged down" by Aaron Preer on the day of the burglary and "asked to transport a television set in the company of the other gentleman to the location in Columbus." The witness stated that defendant said he "immediately assumed that this guy had had problems with his girlfriend *Page 695 
and he was just taking back the TV he had loaned her. . . . that he waited on the road, raised the trunk of the car and the guy brought the TV up and put it in the trunk" and that they then proceeded to Columbus. According to defendant, defendant had not known Preer before this occasion. Defendant told the officer that Preer "offered to pay him a nominal fee to run him and the TV over to Columbus," but he was never paid.
Detective Boyd Battles, of the Phenix City Police Department, who made the initial investigation of the burglary, testified that on February 24, 1977, defendant told him:
 ". . . Aaron Preer had offered him two dollars to take him to Columbus and that he had just got off from work and Aaron Preer wanted him to go up the road and turn around and come back and he would have some of his stuff that he got out of his girlfriend's house and that he wanted me to take him to Columbus. He stated he went up and turned around and he come back and Aaron Preer was standing beside the road with the TV in his hand and that he got in the car and they went to Columbus."
The witness said:
 "He [defendant] made the statement to myself that Aaron Preer advised him to go up the road and turn around and come back, that he would have his stuff out of his girlfriend's house. He made the statement to me that as he went up the road and came back, that Aaron Preer was standing beside the road with the road [sic] with the TV."
All the evidence stated above was presented either on direct examination or on cross-examination of witnesses for the State. At the conclusion of the State's case, defendant moved that the evidence be excluded. The motion was overruled. Thereupon, defendant introduced interrogatories to, and answers of, Aaron Preer, who said defendant did not assist him in burglarizing the house; that defendant had no knowledge of the burglary; that he had told defendant the television set belonged to defendant and he was moving it to another address in Columbus; that he paid defendant at the time for taking the television set to Columbus; that he did not tell defendant the set was stolen. He further said, in answer to the question as to the purpose of the hood being raised on the automobile, that it was "something concerning the motor or the oil or the transmission or something but I can't verify which one it was. Transmission oil was leaking, one or the two, I can't remember."
Without defendant's taking the stand, and without presenting any testimony other than the interrogatories to and answers of Preer, defendant rested. No request for the general charge or directed verdict was made.
The evidence presents a debatable question as to defendant's guilt of burglary.
Whether the court was in error in overruling defendant's motion to exclude the evidence is to be determined by the state of the evidence at the time the State rested. Whether defendant was entitled to the general affirmative charge in his favor after the closing of the case, and after the answers of Preer had been introduced in evidence, is not for our decision, as no request for the affirmative charge or a directed verdict in favor of defendant was made. Nevertheless, the answers of Preer afford some aid to an understanding of the explanations of defendant as shown by the evidence for the State and thereby justify a consideration of such answers.
Both parties acknowledge the applicability of Code of Alabama 1940, Tit. 14, § 14, abolishing the distinction between an accessory before the fact and a principal and between principals in the first and second degree and providing that all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, are to be indicted, tried, and punished as principals. The case was submitted to the jury to determine whether defendant was an aider or abettor of Preer in the commission of the burglary. *Page 696 
Knowledge of the commission of a felony, after its commission, without aid being rendered to the active felon in the commission of the felony, is not sufficient to authorize a conviction. There must be, by prearrangement or on spur of the moment, a common enterprise or adventure, and a criminal offense contemplated. West v. State, 25 Ala. App. 492,149 So. 354. When, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. Stokleyv. State, 254 Ala. 534, 49 So.2d 284. In Stokley, it was also held that the community of purpose of conspiracy need not be proved by positive testimony, but a jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. The guilt of defendant may be inferred from circumstantial evidence. Parsonsv. State, 33 Ala. App. 309, 33 So.2d 164; Foster v. State, (burglary), 43 Ala. App. 435, 191 So.2d 523, cert. denied280 Ala. 713, 191 So.2d 527; Poellnitz v. State, (burglary),48 Ala. App. 196, 263 So.2d 181 (1972).
It has been repeatedly held that once burglary has been definitely established by the evidence, evidence of possession by defendant soon thereafter of goods stolen in the burglary affords a logical inference, in the absence of a satisfactory explanation of the possession, that the possessor is guilty of burglary. Breazeale v. State, 51 Ala. App. 320, 285 So.2d 130, cert. denied 291 Ala. 774, 285 So.2d 134; Wildman v. State,42 Ala. App. 357, 165 So.2d 396, cert. denied 276 Ala. 708,165 So.2d 403; Miller v. State, 43 Ala. App. 287, 189 So.2d 576, cert. denied 280 Ala. 715, 189 So.2d 580, cert. denied385 U.S. 1043, 87 S.Ct. 783, 17 L.Ed.2d 687; Rutherford v. State,48 Ala. App. 289, 264 So.2d 210, cert. denied 288 Ala. 750,264 So.2d 214. The question of the guilt or innocence of defendant narrows to whether the apparently exculpatory portions of defendant's explanation of his conduct, as related in the testimony of witnesses Battles and Butler, and as based upon the answers of the admitted burglar, Aaron Preer, were true and not reasonably consistent with guilt.
Although the guilt of defendant is not absolutely conclusive, there are several incriminating circumstances, in addition to his possession of the television soon after the burglary. What he said to one officer is not absolutely consistent with what he said to another. In one, it is indicated that there was a flagging down by Preer and a prompt delivery of the television set to the trunk of defendant's automobile; in the other, defendant drove on past Preer, down the street somewhere and turned around and returned to Preer. As to each statement, it is to be noted that at the time defendant observed Preer, according to defendant's statement, Preer was across the street from the lane of travel of defendant in his automobile. In other words, according to defendant, Preer, a stranger, flagged him down to ask him to take him in an opposite direction to that which he was traveling. Such a thing happens, of course, at times, but not usually. There is some indication that the on-the-street transaction between Preer and defendant was only momentary, but there is no definite evidence to this effect. The time between defendant's first observance of Preer, according to defendant's statements, and the receipt by him of the television set into his automobile is not definitely shown. That defendant had talked with Preer prior to Preer's breaking and entering the house from which the television set was stolen is consistent with the statements of fact of defendant as contained in the testimony of the officers as well as in the answers of Preer to interrogatories propounded to him, the conclusional statements of Preer to the contrary notwithstanding. Preer's statements to the effect that defendant did not assist him, that he had no knowledge of the burglary, that he told defendant the television belonged to Preer are conclusionally, but not factually, irreconcilable with a conspiracy between defendant and Preer prior to Preer's entry into the burglarized house. *Page 697 
The strength of the incriminating circumstances of what occurred is emphasized by the spontaneous reaction of Charlie Edmunds, the bus driver. That he would have taken the pains to make a memorandum of the tag number of the automobile and report it the same day to a police officer speaks louder than words. If he, by what he observed in only a few seconds, believed that a stolen television set was being placed in the automobile of defendant, the question naturally arises as to why defendant could have been so easily duped into believing otherwise, when he had a better opportunity, and a longer time, to learn the truth. We realize that for him to have been guilty he would have had to have been aware of the truth prior to or at the time of the breaking and entry, but reasonableness of his story is the test of his guilt, and whatever reasonableness it would otherwise have pales in the light of all the circumstances, including the actions of Mr. Edmunds.
The trial judge and the jury had the advantage of detailed explanations by witnesses as to the locations of various places in the vicinity of the burglary. Diagrams, which are not before us, were extensively used on the trial. There is nothing in the record to indicate that the jury was not convinced beyond a reasonable doubt that defendant designedly aided and abetted Preer in the commission of the burglary. Whether correct or not, there was substantial evidence to justify such a finding, and we are not justified in vitiating the verdict by reason of any possible disagreement therewith.
The only other contention for a reversal is based largely upon some remarks of the trial judge to the jury at the inception of the trial. The trial judge rather lengthily explained to the jury the procedure that could be expected, including the examination and cross-examination of witnesses and arguments of counsel for the State and defendant. He said, "The attorneys will again speak to you in something that is referred to as final argument or final summation by the parties." He said, "The District Attorney's Office will speak first on behalf of the State of Alabama and then Mr. Roney will speak on behalf of the Defendant. . . ." At the conclusion of the evidence, the State made an argument, but defendant's attorney waived argument, and no further argument was attempted to be made by the State. No objection, no exception was taken by defendant to any of the remarks of the trial judge, and no point was made on the trial as to the action and remarks just narrated. We can readily see that a trial judge is likely to give rise to justifiable complaint in attempting at the beginning of a case to foretell what the parties or their attorneys will do from the beginning to the end of the case, but in the absence of ineradicable prejudice, which clearly was not present here, we cannot reverse the trial court for its action, where there was no protest of any kind on the trial. In the absence of such a protest, such as an exception to what the court said, there is nothing presented for review. Tillis v.State, 292 Ala. 521, 296 So.2d 892 (1974); Richardson v. State,57 Ala. App. 24, 325 So.2d 540 (1975), cert. denied 295 Ala. 415, 325 So.2d 543 (1976); Walton v. State, 52 Ala. App. 541,295 So.2d 262 (1974); Harris v. State, 56 Ala. App. 301,321 So.2d 267 (1975).
We have searched the record for error prejudicial to defendant and have found none. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court, under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment is hereby
AFFIRMED.
All the Judges concur. *Page 698