Joel Brent Calhoun, the appellant, was indicted and convicted for trafficking in cannabis in violation of Alabama Code §20-2-80 (1975). Sentence was eight years' imprisonment and a $25,000 fine. Four issues are raised on appeal.
 I
Calhoun argues that the search warrant was invalid because the supporting affidavit contained false information. We disagree.
A search warrant may be invalidated if the affidavit contains a material and false statement made knowingly and intentionally or in reckless disregard for the truth. Franks v. Delaware,438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); Annot., 24 A.L.R. 4th 1266 (1983). The defendant bears the burden of establishing the perjury or reckless disregard for the truth by a preponderance of the evidence. Franks, 438 U.S. at 156,98 S.Ct. at 2676.
Here, there was a direct conflict in the evidence of whether or not Calhoun was at his residence on the evening of August 5, 1981. The resolution of this factual issue required the trial judge to weigh the credibility of the witnesses. His determination is entitled to great weight on appeal. State v.Klar, 400 So.2d 610, 613 *Page 270 
(La. 1981). "When there is conflicting testimony as to a factual matter such as this, the question of the credibility of the witnesses is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence." Klar, 400 So.2d at 613.
 II
Calhoun argues that the State failed to prove that he knew he was in actual or constructive possession of more than 2.2 pounds of marijuana.
Knowledge by the accused of the presence of the controlled substance is an essential element and prerequisite to conviction for the offense of trafficking. Alabama Code §20-2-80 (1975). See also Walker v. State, 356 So.2d 672 (Ala. 1977). Section 20-2-80 (1) states, in pertinent part, that "(a)ny person . . . who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall be known as `trafficking in cannabis.'" Hence, under our trafficking statute, the State must prove that the accused knew he was in possession of more than one kilo of marijuana. That knowledge will almost always be proven by circumstantial evidence. "[G]uilty knowledge may be established by circumstantial evidence." Temple v. State, 366 So.2d 740, 741 (Ala.Cr.App. 1978). See also German v. State, 429 So.2d 1138 (Ala.Cr.App. 1982). Knowledge of the presence and the quantity of the controlled substance may properly be inferred from the possession of the substance by the accused. "So, an inference of the requisite knowledge of narcotics is created by the finding of them on premises under the control of the accused, even though other persons might have access to the premises, or are actually present thereon." 28 C.J.S. Drugs Narcotics
Supp. § 194 (1974) (footnotes omitted).
Here, it is undisputed that Calhoun and John Landers were living in the residence on Shoals Creek Road in August of 1981. Mike Ponter had been staying with them in April and May. Law enforcement agents had had this house under surveillance for several months and had observed "vehicles coming and going to and from the residence consistently at periodic times."
Calhoun was arrested as he was returning home from work on the morning of August 7, 1981. He was escorted to his residence and the search warrant was executed. Calhoun "turned off the burglar alarm system and then opened the door with a key." No one was in the residence when the officers arrived. It was undisputed that this was Calhoun's home and that he lived there.
In the garage area of the house was found "a green color plastic garbage type bag located sitting on the floor of the garage partially underneath a kid's type swimming pool, one of those little plastic swimming pools." The plastic bag contained eleven smaller bags of marijuana. In the garage near the door into the kitchen was an old antique ice box containing "a green plastic bag with three bags of cannabis material in clear plastic bags."
Several pistols and other weapons were found in Calhoun's bedroom. Four boxes of "rolling papers" were also found there.
In another bedroom were found three clear plastic bags of marijuana, each containing approximately two ounces of marijuana. Also found were a "bottle of cutting agent", two sets of "triple beam gram weighing scales", and a smaller set of scales. In this bedroom was found "various paper work relating to the name Mike Ponter." Sometime during the search, Calhoun told the officers that Ponter had lived there but had moved to Florida.
In the kitchen were found nine full boxes and two "partial boxes" of zip-lock bags of the size "commonly used to hold a pound or more of marijuana." Two "coke screens" were found in the house, one of which was discovered in Calhoun's bathroom.
At least eleven firearms were found in the house. Between eleven and thirteen pounds of marijuana were found throughout the house and garage. None of the *Page 271 
marijuana in the house or garage was in plain view and no marijuana was found in Calhoun's bedroom.
After Calhoun had been warned of constitutional rights and made a knowing and intelligent waiver, he removed a tray from the top of a "stereo rack" in the living room and said, "This is my smoking dope. This is all of it. Let's go." A wooden box was also removed from the stereo stand. It contained four clear plastic bags of marijuana, two bags of rolling papers, and a smoking pipe. The tray contained "approximately seven grams of loose marijuana debris of stems and stems mainly." Later, at the jail, Calhoun stated, "Man, I just messed up" and "I really messed up this time."
Here, the quantity of the marijuana and paraphernalia found and its location throughout the house, when coupled with Calhoun's admission of ownership of some of the marijuana, constitutes sufficient circumstantial evidence to show Calhoun's knowing possession and control of the marijuana. "Evidence that the defendant was a user of narcotics or was under the influence of narcotics at the time of his arrest has been held in several cases to be a sufficient circumstance by itself, or in combination with others, tending to link the defendant with narcotics found on premises or in an area of which he was in nonexclusive possession so as to sustain his conviction for illegal possession of such narcotics." Annot., 56 A.L.R.3d 948, § 8 (a) (1974). Temple, 366 So.2d at 743. Calhoun is connected to the marijuana through the fact that the marijuana was found throughout his residence and the fact that he admitted possession and use of some of the marijuana. SeeCampbell v. State, 439 So.2d 723 (Ala. 1983). This evidence was sufficient to authorize the submission of the issue of his guilt to the jury.
 III
In his oral instructions to the jury, the trial judge charged that Calhoun could be convicted if he conspired with others to possess more than a kilo of marijuana. Defense counsel objected on the ground that conspiracy was a separate crime defined by statute with which Calhoun had not been charged. Calhoun recognizes that before the adoption of Alabama's new criminal code it was permissible to find a defendant guilty of having committed a substantive offense upon proof of a conspiracy to commit that offense. James v. State, 351 So.2d 693 (Ala.Cr.App. 1977). However, he contends that under Alabama's new criminal code conspiracy is a separate criminal offense.
After objection was made the trial judge gave the following additional instructions:
 "He [defendant] must have been in possession himself manually or constructively or aided and assisted somebody or been involved in a conspiracy with somebody else to possess, either way, more than two point two pounds of cannabis. "As concerns the conspiracy, there is no charge — there is an offense under the law called conspiracy, but that is not what is charged here. You could not find this defendant guilty of that offense under the law, and I don't mean to make — to give you information to the effect that you can. I simply said that the offense can be committed by persons who conspire together, and if persons do conspire together, then they are all guilty if one is guilty. But one has to be guilty before the others can be."
. . . .
 "What I am saying is before there could be guilt of this defendant this defendant had to be in either actual or constructive possession or some other person had to be in actual or constructive possession, and this defendant had to have been aiding or assisting or being involved in some knowledgeable way with that possession, whether it was his own sole possession or the possession of others."
This issue was properly preserved for review. Where the extended charge does not cure the error of the original charge to which an exception was reserved, but continues the error, the failure to again except is not a waiver of the original exception. *Page 272 Milligan v. State, 45 Ala. App. 112, 115, 226 So.2d 172 (1969);Davis v. State, 40 Ala. App. 118, 120-21, 112 So.2d 353 (1958), cert. denied, 269 Ala. 695, 112 So.2d 355 (1959).
Conspiracy is a distinct and separate substantive offense from the crime intended, and does not require that the criminal offense agreed to be actually completed. "[C]onspiracy is an inchoate offense and, properly, not a theory of complicity. Alabama law often ambiguously holds one liable for a crime based upon the behavior of another, predicating liability upon the aiding and abetting theory, or by virtue of conspiracy liability for substantive crimes. . . . Thus, the determination of complicity responsibility often has been couched in terms of conspiracy. Under this Criminal Code, the complicity provisions in § 13A-2-23 are the exclusive method of determining criminal responsibility for the conduct of others." Commentary to §13A-4-3.
Prior to the adoption of Alabama's new criminal code, a conviction of one charged in the indictment with having been the actual perpetrator of a crime is authorized on proof of a conspiracy or that the accused aided or abetted in the commission of the crime. Stokley v. State, 254 Ala. 534, 541,49 So.2d 284 (1950). Since Alabama now has an inchoate crime of statutory conspiracy, § 13A-4-3, any confusion could be avoided by recognizing the subtle distinctions between "complicity" and "conspiracy" (§ 13A-4-3). However, we find the error, if any, was harmless.
 "Joint participants in a crime may be denominated `conspirators' and a joint act or scheme may be called a `conspiracy' since these words do not lose all of their ordinary meaning and content merely because there exists a separate crime of conspiracy." Smith v. State, 368 So.2d 298, 304 (Ala.Cr.App. 1978), cert. quashed, Ex parte Smith, 368 So.2d 305
(Ala. 1979).
It is clear that one may be convicted for possession of a controlled substance upon proof that he was aiding and abetting in its commission. Annot., 47 A.L.R.3d 1239 (1973). The possession of illegal drugs is susceptible of joint commission and the guilt of the accused does not depend upon proof of his ownership. Mitchell v. State, 395 So.2d 124, 126 (Ala.Cr.App. 1980), cert. denied, Ex parte Mitchell, 395 So.2d 127 (Ala. 1981).
 IV
Calhoun contends that the reversible error was committed when the State failed to disclose a statement Calhoun made.
In a motion to produce, Calhoun requested the disclosure of any exculpatory evidence under Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and "(c)opies of all statements allegedly made by the Defendant, whether oral, written, taped, recorded or in whatever form, that the prosecution either intends to introduce into evidence or to rely upon at the trial of the case." The circuit court granted the motion to the extent that it ordered the State "to produce all evidence favorable to the defendant in State's possession and all written statements signed by the defendant in the possession of the State."
Defense counsel objected when the State attempted to elicit from Decatur Police Investigator Jep H. Tallent Calhoun's statement that "This is my smoking dope. This is all of it. Let's go." Officer Tallent reduced this statement to writing in his written report. This report was neither seen or signed by Calhoun. "It is within the discretion of the trial court as to whether a prosecuting officer will be compelled to turn over to the defense written notes made by officers during the investigation of a crime." Allen v. State, 414 So.2d 163, 166
(Ala.Cr.App. 1982).
In Brady v. Maryland, the United States Supreme Court recognized the prosecutor's duty to disclose evidence favorable to an accused. Prosecutors, however, have no duty under Brady
to disclose inculpatory evidence. United States v. Cochran,697 F.2d 600, 605 (5th Cir. 1983); United States v. Bailleaux, *Page 273 685 F.2d 1105, 1113 (9th Cir. 1982). Evidence that is both favorable and unfavorable to the defendant must be disclosed under Brady. Sellers v. Estelle, 651 F.2d 1074, 1077 (5th Cir. 1981), cert. denied, 455 U.S. 927, 102 S.Ct. 1292,71 L.Ed.2d 472 (1982).
Calhoun argues that his statements were favorable to him because they indicated that only the marijuana present in the box and tray in the living room was in his possession and raised a reasonable doubt that Calhoun knowingly possessed, actually or constructively, more than 2.2 pounds of marijuana. We view the statement as the most damaging single piece of evidence in the State's case against Calhoun. The statement is inculpatory evidence which the prosecutor had no duty to disclose.
Furthermore, even if the State were required to produce this statement under Brady, we fail to see how the nondisclosure harmed Calhoun. Calhoun testified in his own defense and used this statement to show that the only marijuana he knew of was in the tray and the box. He testified that after the officers found his wooden box on the stereo stand, he "reached up on the top shelf of the stereo stand and took the tray down and told them that this was my smoking dope, to take it, too." He admitted ownership of the marijuana in the box and on the tray but denied having any knowledge of, or having seen, any other marijuana in his house or garage.
On cross examination, Calhoun admitted that he smoked marijuana and that he had smoked it with Landers and Ponter. He admitted that one "coke screen" was found in his bathroom but denied ownership. On further cross examination by the State, Calhoun admitted that immediately before the search of his residence he was stopped and arrested by the police. At that time his 1978 Cadillac El Dorado was searched and under the front passenger's seat was found a box containing "some marijuana, papers, some Valium, and there is a vial."
Since Calhoun admitted making the statement, he can hardly claim that he had no knowledge of its existence in preparing his defense.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.