BURKE, Judge.
Alphonso Dudley Gillis appeals the circuit court’s denial of his Rule 32, Ala. R.Crim. P., petition for postconviction relief in which he challenged his August 3, 2010, guilty plea to first-degree sodomy, see § 13A-6-63(a)(3), Ala.Code 1975, and his resulting sentence of 15 years’ imprisonment.
On or about July 15, 2011, Gillis filed this Rule 32 petition alleging that he was denied effective assistance of counsel because, Gillis says, his trial counsel incorrectly advised him that he was eligible for “incentive good time” and parole. Gillis further claims that, had he known that he was not eligible for incentive good time and parole, he would not have pleaded guilty. After a response from the State, the circuit court held an evidentiary hearing on October 19, 2011, and heard testimony from witnesses, including Gillis and his trial counsel.
At the evidentiary hearing, Gillis was asked to explain what his trial counsel told him before entering his guilty plea. Gillis stated:
“He said, you’ll be eligible for good time and parole. I mean, I think there was a conflict before because of laws being changed in 2005. And being that it was alleged to have happened in 2002, and Class A’s and Class B’s. I’m not *283 sure what happened. Maybe something got crossed. I don’t believe he did it on purpose. I don’t know why I was told these things. And that is the reason I pled.”
(R. 14.) Gillis also testified that, on the date of sentencing, he executed an explanation-of-rights-and-plea-of-guilty form after being informed by trial counsel of its content and the consequences of executing the form.
Trial counsel testified that, on the morning of the plea, he talked to Gillis about the consequences of the plea. Trial counsel stated that “[b]eeause it was, again, that morning I was so concerned about this issue, because the case was from several years ago, the time of occurrence. I was concerned about which law he was going to be sentenced under or have to abide under, which was the concern of mine regarding his parole issue.” (R. 39.) Trial counsel claimed that he was concerned with' the amount of time Gillis would have to serve before he was eligible for parole, or if he was going to even be eligible, so he had contacted the individual in charge of most of the sex-offender investigations at the sheriffs office. The sheriffs office referred counsel to the Attorney General’s Office. Trial counsel testified that he contacted the Attorney General’s Office several times regarding whether Gillis would be eligible for parole under the old law because the events occurred several years before the new statute, under which he would not be eligible, was enacted. In regard to the information he received from the Attorney General’s Office, trial counsel stated the following:
“They weren’t absolutely a hundred percent sure, but they thought he was going to be eligible for parole, but it wasn’t going to be an eighty-five percent type case or a hundred percent type case. They couldn’t tell me for absolute certainty. And that is what I relayed to [Gillis].”
(R. 41.) Counsel also testified that he advised Gillis of the possible range of his sentence and explained his rights and the consequences of executing the form.
The circuit court subsequently denied Gillis’s petition, finding that the Gillis’s claims of ineffective assistance of counsel were “untrue and failed to state a claim for relief.” (C. 60.) In its order denying Gil-lis’s petition, the circuit court stated that neither Gillis nor his witness at the hearing had provided testimony that showed that trial counsel’s performance was deficient or that Gillis was prejudiced as a result of counsel’s performance; instead, the circuit court found that trial counsel had made numerous calls to the Attorney General’s Office to determine whether Gil-lis would be eligible for parole and that trial counsel “made it clear to [Gillis] that the Attorney General’s Office offered no definitive response and that he gave [Gil-lis] a complete accounting of his discussion with the Attorney General’s office.” (C. 58.) Thus, the circuit court found that Gillis was properly advised of the range of his sentence and knew of his rights and the consequences of his guilty plea.
On appeal, Gillis reasserts his claim that he presented to the circuit court in his petition and also alleges that the circuit court abused its discretion by denying his petition. “ ‘The standard of review on appeal in a post-conviction proceeding is whether the trial judge abused his discretion when he denied the petition. Ex parte Heaton, 542 So.2d 931 (Ala.1989).’ ” Strickland v. State, 771 So.2d 1123, 1125 (Ala.Crim.App.1999) (quoting Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992)).
“Once a petitioner has met his burden of pleading so as to avoid summary *284 disposition pursuant to Rule 32.7(d), Ala. R.Crim. P., he is then entitled to an opportunity to present evidence in order to satisfy his burden of proof’ pursuant to Rule 32.9, Ala. R.Crim. P. Ford v. State, 831 So.2d 641, 644 (Ala.Crim.App.2001). This Court has also stated the following regarding the findings made by the circuit court at an evidentiary hearing in postconviction proceedings:
“ ‘The resolution of ... factual issue[s] required the trial judge to weigh the credibility of the witnesses. His determination is entitled to great weight on appeal.... “When there is conflicting testimony as to a factual matter ..., the question of the credibility of the witnesses is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence.” ’
“Calhoun v. State, 460 So.2d 268, 269-70 (Ala.Crim.App.1984) (quoting State v. Klar, 400 So.2d 610, 613 (La.1981)).”
Brooks v. State, 929 So.2d 491, 495-96 (Ala.Crim.App.2005).
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court articulated that to prevail - on a claim of ineffective assistance of counsel, the petitioner has the burden of showing (1) that his counsel’s performance was deficient and (2) that the deficient performance actually prejudiced the defense. To prove prejudice, “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” 466 U.S. at 694. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. Furthermore, “a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” 466 U.S. at 689.
This Court recently held in Frost v. State, 76 So.3d 862, 868 (Ala.Crim.App.2011), that trial counsel’s failure to inform Frost that he was not eligible for parole because he had been convicted of a Class A felony was ineffective assistance of counsel. In Frost, Frost’s trial counsel testified that he told all his clients who asked about parole that it “ ‘was up to the Department of Corrections because I don’t own you and neither does the Court after the plea.’ ” Id. at 865. Likewise, in Stith v. State, 76 So.3d 286, 292-293 (Ala.Crim.App.2011), this Court held that trial counsel’s failure to inform Stith that he would not be eligible to receive correctional incentive time because he had been convicted of a Class A felony was ineffective assistance of counsel. In Stith, Stith’s trial counsel affirmed in his affidavit, “T carefully made sure that he understood that no one, except for the Department of Corrections, calculate [sic] or make a determination regarding good time credit to be applied against a sentence that had been imposed.’ ” Stith, 76 So.3d at 292.
In both Frost and Stith, we stated that a simple reading of the applicable statute would have informed counsel that incentive-time deductions and parole were not available for an inmate convicted of a Class A felony. Frost, 76 So.3d at 868; Stith, 76 So.3d at 292. Because trial counsel in both Frost and Stith indicated to their clients that it was up to the Department of Corrections whether they received good time or parole and implied that their clients would be eligible contrary to the clear language of the applicable statute, this Court held that Frost’s and Stith’s trial counsel had rendered the ineffective assistance of counsel. Id.
*285 The circumstances of the present case are distinguishable from cases like Frost and Stith. Unlike trial counsel in both Frost and Stith, trial counsel in the present case clearly explained to Gillis that, although he had been actively trying to find an answer regarding Gillis’s eligibility for parole, he was not certain whether the fact that the actual offense was committed prior to the enactment of the statute would allow Gillis to still be eligible for parole. Gillis’s own testimony at the hearing established that he understood that his attorney was concerned with a conflict of his eligibility because of the applicable statute “being changed in 2005” and the incident was “alleged to have happened in 2002.” (R. 14.) It is evident from the record that Gillis was fully informed of the question of his eligibility and still entered his guilty plea, knowing that there was a clear possibility that he was not eligible for parole. In Frost and Stith, counsel had incorrectly informed the defendants of their parole opportunities and made no effort to inform them correctly.
In the present case, defense counsel neither omitted to apprise Gillis of his possibility of parole nor did he commit ineffectiveness by informing him that he would be eligible for parole. See Padilla v. Kentucky, 559 U.S. 356, 180 S.Ct. 1473, 176 L.Ed.2d 284 (2010). He made Gillis aware of his attempts to determine' which law applied, and although there may have been other avenues that defense counsel could have pursued, Gillis is not entitled to the best counsel possible; rather he is entitled to the effective assistance of counsel. This means reasonable counsel whose performance is not to be evaluated with the aid of hindsight.
Here, Gillis’s counsel aggressively sought to determine his parole eligibility and fully informed Gillis of the statutes and how this change in the law might affect his possibility of parole. Gillis understood this and chose to enter his plea. Thus, even if Gillis could claim that his counsel’s performance was unreasonable or deficient, he could not prove prejudice or that, but for his counsel’s conduct, he would not have pleaded guilty. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although at one time Gillis stated that had he known that he might not have been eligible for parole, he would not have pleaded guilty, he also consistently acknowledged that he was informed that, if the new statute applied, he would not be eligible for parole. He nevertheless decided to plead guilty. This Court is instructed to refrain from credibility choices and from reweighing the evidence and to “ ‘ “indulge a strong presumption that counsel’s conduct falls within the range of reasonable professional assistance.” ’ ” Moody v. State, 95 So.3d 827 (Ala.Crim.App.2011).
“ ‘ “Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-34 [102 S.Ct. 1558, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within *286 the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ See Michel v. Louisiana, [350 U.S. 91], at 101 [76 S.Ct. 158, 100 L.Ed. 88 (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
“ ‘Strickland, 466 U.S. at 689.
“ ‘ “[T]he purpose of ineffectiveness review is not to grade counsel’s performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [ (1984) ]
Moody v. State, 95 So.3d at 827.
Therefore, based on an examination of the entire record, we conclude that the trial court was correct in finding Gillis’s petition to be without merit. When there is conflicting testimony as to a factual matter, such as the conflict here between Gillis and his trial counsel, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, and its factual determinations will not be disturbed unless they are clearly contrary to the evidence. See Brooks, 929 So.2d at 495-96. The circuit court properly found that Gillis failed to prove that his trial counsel’s performance was deficient or that he was prejudiced thereby. See Strickland, supra. Therefore, the circuit court’s denial of Gillis’s petition was proper.
Based on the foregoing, the judgment of the circuit court is due to be affirmed.
AFFIRMED.
WINDOM, P.J., concurs.
KELLUM, J., concurs in the result.
JOINER, J., dissents, with opinion.
WELCH, J., joins Judge Joiner’s dissent.