[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 493 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 494 
Christopher Eugene Brooks, currently an inmate on death-row at Holman Correctional Facility, appeals the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P.
In 1993, Brooks was convicted of three counts of capital murder for murdering the victim during the course of a rape, during the course of a robbery, and during the course of a burglary. The jury, by a vote of 11 to 1, recommended that Brooks be sentenced to death. The circuit court sentenced Brooks to death. His conviction and death sentence were affirmed on direct appeal. SeeBrooks v. State, 695 So.2d 176 (Ala.Crim.App. 1996), aff'd,695 So.2d 184 (Ala. 1997), cert. denied, 522 U.S. 893, 118 S.Ct. 233,139 L.Ed.2d 164 (1997). This Court issued the certificate of judgment on the direct appeal on May 13, 1997.
In September 1998, Brooks filed a petition for postconviction relief pursuant to Rule 32, Ala.R.Crim.P.[1] He filed amended petitions in July 1999 and May 2000. Evidentiary hearings were held in May 2000 and in July 2000. In November 2000, the circuit court entered a detailed order denying the Rule 32 petition. This appeal followed.
In Brooks v. State, we stated the following concerning the evidence presented at Brooks's trial:
 "The evidence at trial showed that the appellant and the victim met while working as counselors at a camp in New York state. On December 31, 1992, the victim's *Page 495 
body was found under the bed in the bedroom of her apartment in Birmingham, Alabama. She had been bludgeoned to death, and she was naked from the waist down.
 "On the night before the victim's body was found, a co-worker of the victim's saw the appellant enter the restaurant where they worked and saw the victim talking to the appellant. Later that night, the victim spoke with another friend by telephone; that friend heard a male voice in the background and the victim told her friend that a friend was sleeping on her living room floor.
 "A DNA analysis was performed on semen found in the victim's vagina. The results were compared with the appellant's blood. There was testimony that the odds of finding another person with the same DNA as the appellant's and as found in the semen taken from the victim's body would be 1 in 69,349,000 among white persons and 1 in 310,100,000 among black persons. [Brooks is white.] A latent print of the appellant's palm was found on the victim's left ankle. A bloody fingerprint matching the appellant's was found on a doorknob in the victim's bedroom, as were two other matching latent fingerprints. The appellant's thumbprints were also found on a note in the victim's apartment.
 "The evidence further showed that the appellant was seen driving the victim's car on the night of December 31 and that he told a witness that he `had to fuck that girl to get that car.' The car was found in Columbus, Georgia, where the appellant resided. Inside the car was a package of photographs with the name `Brooks, C.' on the package. When the appellant was arrested, he had in his possession the victim's car keys and her Shell Oil Company credit card, which he had used on several occasions. He had also cashed the victim's paycheck and one of her personal checks. Several items were missing from the victim's apartment and the evidence showed that the appellant had pawned these items at various pawnshops in Columbus."
695 So.2d at 178-79.
 Standard of Review
Brooks is appealing the denial of his postconviction petition attacking his capital-murder conviction and his sentence of death. This Court does not apply a plain-error standard of review when reviewing a lower court's ruling on the denial of a Rule 32 petition attacking a death sentence. See Ex parte Dobyne,805 So.2d 763 (Ala. 2001), and Rule 45A, Ala.R.App.P. Moreover, all of the procedural bars contained in Rule 32 apply equally to all cases, even those involving the death penalty. Adkins v. State, [Ms. CR-99-0834, March 26, 2004] ___ So.2d ___, ___ (Ala.Crim.App. 2001) (opinion on return to third remand).
"`The standard of review on appeal in a postconviction proceeding is whether the trial judge abused his discretion when he denied the petition.'" Elliott v. State, 601 So.2d 1118,1119 (Ala.Crim.App. 1992) (quoting Ex parte Heaton,542 So.2d 931 (Ala. 1989)). However, "when the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parteWhite, 792 So.2d 1097, 1098 (Ala. 2001).
Moreover, this court has stated:
 "The resolution of . . . factual issue[s] required the trial judge to weigh the credibility of the witnesses. His determination is entitled to great weight on appeal. . . . `When there is conflicting testimony as to a factual matter . . ., the question of the credibility of the witnesses *Page 496 
is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence.'"
Calhoun v. State, 460 So.2d 268, 269-70 (Ala.Crim.App. 1984) (quoting State v. Klar, 400 So.2d 610, 613 (La. 1981)).
 I.
In 1993, when Brooks was tried, the procedure established by the Alabama Supreme Court in Ex parte Jackson, 598 So.2d 895
(Ala. 1992), was in effect. In order to raise a claim of ineffective assistance of trial counsel on direct appeal appellate counsel could move to extend the time for filing a motion for a new trial. Claims of ineffective assistance could then be presented in the motion for a new trial and reviewed on direct appeal. In 1996, the Alabama Supreme Court reversed its earlier holding in Jackson, citing as its reason the numerous procedural problems that the decision had created. Ex parteIngram, 675 So.2d 863 (Ala. 1996). The court specifically held that Ingram was not to be applied retroactively.675 So.2d at 865.
At trial Brooks was represented by attorneys Kenneth John Gomany and J. Scott Boudreaux. Attorney Virginia Vinson was appointed to represent Brooks on appeal. Trial counsel filed a motion for a new trial, and appellate counsel was granted leave to amend the motion under the Jackson procedure. Appellate counsel raised 11 claims of ineffective assistance of trial counsel in the amended motion for a new trial. A hearing was held on the motion, and the circuit court denied relief. Several of the claims were raised and addressed on direct appeal. As we stated in Payne v. State, 791 So.2d 383, 390 (Ala.Crim.App. 1999), cert. denied, 791 So.2d 408 (Ala. 2000):
 "Because Payne was represented by different counsel at trial and on appeal, any claim of ineffective assistance of trial counsel should have been raised in a motion for a new trial in order to preserve the issue for review. Ex parte Jackson[, 598 So.2d 895
(Ala. 1992)]. Thus, the trial court correctly concluded that Payne's claims regarding ineffective assistance of trial counsel are procedurally barred by Rule 32.2(a)(3) and (a)(5)[, Ala.R.Crim.P.,] as claims that could have been, but were not, raised at trial or on appeal. See Bryant v. State, 739 So.2d 1138 (Ala.Cr.App. 1998); Dyson v. State, 722 So.2d 782 (Ala.Cr.App. 1997); Hartzog v. State, 733 So.2d 461 (Ala.Cr.App. 1997); Andersch v. State, 716 So.2d 242 (Ala.Cr.App. 1997); Arrington v. State, 716 So.2d 237 (Ala.Cr.App. 1997); Alexander v. State, 679 So.2d 227 (Ala. 1996); Covington v. State, 671 So.2d 109 (Ala.Cr.App. 1995); Alderman v. State, 647 So.2d 28 (Ala.Cr.App. 1994) Ex parte Jackson, supra. Cf. Mason v. State, 768 So.2d 981
(Ala.Cr.App. 1998) (applying Ex parte Jackson in a capital case); Bush v. State, 695 So.2d 70, 128
(Ala.Cr.App. 1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997); and Brown v. State, 712 So.2d 1112 (Ala.Cr.App. 1997)."
See also Baker v. State, 683 So.2d 1 (Ala.Crim.App. 1995);Page v. State, 622 So.2d 441 (Ala.Crim.App. 1993). Therefore, any claims related to the performance of trial counsel are procedurally barred in this postconviction proceeding. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.
However, a Rule 32 petition is the proper means to secure review of a claim of ineffective assistance of appellate counsel. See Brown v. State, 681 So.2d 1102 (Ala.Crim.App. 1996).
 II.
Brooks asserts many claims in his brief to this Court relating to the performance *Page 497 
of his appellate counsel that he did not pursue at the hearing on his Rule 32 petition.[2] The circuit court made the following findings concerning these issues:
 "[A]lthough all of the attorneys involved in this case testified during these proceedings, Brooks did not question them about the majority of claims included in his petition. Rule 32.3 of the Alabama Rules of Criminal Procedure places the burden of proof squarely on Brooks, and Strickland [v. Washington, 466 U.S. 668 (1984),] mandates that his claims be reviewed pursuant to a presumption that counsel rendered effective assistance. Therefore, where the record is unclear — either because an issue was not addressed or because counsel could not recall — the Court will presume that counsel acted in a manner consistent with the requirements of the Sixth Amendment. Such an approach to the review of Brooks's claim is required by the mandates of Strickland. See Williams v. Head, 185 F.3d 1223, 1236 (11th Cir. 1999) (stating that `where the record is incomplete or unclear about [counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment'); Chandler v. United States, 218 F.3d [1305] at 1315, n. 15 [(11th Cir. 2000)] (equating the presumption of competence with `the "presumption of innocence" in a criminal trial, in which "the defendant is not required to come forward with proof of his innocence once evidence of guilt is introduced to avoid a directed verdict of guilty"')."
(C.R. 28-29.)
At the evidentiary hearing Brooks failed to ask Vinson any questions concerning her reasons for not pursuing many of the claims he now challenges on direct appeal. We have held that a petitioner is deemed to have abandoned a claim if he fails to present any evidence to support the claim at the evidentiary hearing. See Payne v. State, 791 So.2d 383 (Ala.Crim.App. 1999).
Moreover, we agree with the United States Court of Appeals for the Eleventh Circuit:
 "[W]e note that the record is silent as to why trial counsel did not pursue a motion to suppress the evidence obtained from Grayson incident to his arrest on Fourth Amendment grounds; Grayson's habeas counsel did not inquire as to trial counsel's reasons for not raising such a claim either during counsel's deposition or his testimony at the state habeas hearing. `An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."' Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (en banc) (quoting Williams v. Head, 185 F.3d 1223, 1228
(11th Cir. 1999))."
Grayson v. Thompson, 257 F.3d 1194, 1218 (11th Cir. 2001).
The circuit court correctly denied relief on the following claims because Brooks's appellate counsel, Vinson, was not questioned as to why she declined to raise these specific issues in her appellate brief:
 1) That trial counsel's performance was deficient in not objecting to jury instructions;[3] *Page 498 
 2) That trial counsel's performance was deficient in failing to object to the prosecutor's allegedly improper comments and arguments;[4]
 3) That trial counsel's performance was deficient in not objecting to allegedly prejudicial photographs;
 4) That trial counsel's performance was deficient in failing to ensure that all of the trial proceedings were transcribed;
 5) That trial counsel's performance was deficient in failing to object to evidence allegedly illegally seized from the victim's automobile;
 6) That trial counsel's performance was deficient in failing to question jurors about their bias, if any, in favor of the death penalty;
 7) That trial counsel's performance was deficient in failing to ensure that jurors were removed for cause;
 8) That trial counsel's performance was deficient in failing to object to the prosecutor's use of its peremptory strikes;[5]
 9) That trial counsel's performance was deficient in failing to object to the alleged underrepresentation of blacks in the jury pool;
 10) That trial counsel's failed to object on the basis that the imposition of the death sentence in this case was disproportionate to sentences in other similar cases and was cruel and unusual punishment; and
 11) That trial counsel's performance was deficient for failing to object to the imposition of the death sentence because it was imposed pursuant to a pattern of racial bias.
Brooks also alleges that appellate counsel failed to raise numerous meritorious issues on direct appeal.
 III.
Brooks argues that appellate counsel's performance was deficient because, he says, counsel did not adequately research, prepare, and raise issues concerning the performance of his trial counsel.
To prevail on a claim of ineffective assistance of counsel the petitioner must satisfy the standard articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show (1) that counsel's performance was deficient, and (2) that he was prejudiced as a result of the deficient performance.
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances *Page 499 
of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
 "[Strickland v. Washington,] 466 U.S. [668] at 689 [(1984)] (citations omitted). As the United States Supreme Court further stated:
 "`[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'
 "466 U.S. at 690-91. `An accused is entitled "`not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance.'"' Bui v. State, 717 So.2d 6, 27
(Ala.Crim.App. 1997), quoting Thompson v. State, 615 So.2d 129, 134 (Ala.Crim.App. 1992), quoting in turn Haggard v. Alabama, 550 F.2d 1019, 1022 (5th Cir. 1977)."
Adkins v. State, [Ms. CR-99-0834, March 26, 2004] ___ So.2d ___, ___ (Ala.Crim.App. 2001) (opinion on return to third remand).
 "The Supreme Court has instructed that there is `a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' Strickland, 104 S.Ct. at 2065. This presumption is like the `presumption of innocence' in a criminal trial, in which `the defendant is not required to come forward with proof of his innocence once evidence of guilt is introduced to avoid a directed verdict of guilty.' Black's Law Dictionary
823 (6th ed. 1991). This presumption of competence must be disproved by a petitioner. Petitioner continually bears the burden of persuasion on the constitutional issue of competence and further, (adding the prejudice element) on the issue of ineffective assistance of counsel. See Strickland, 104 S.Ct. at 2064 (stating that `defendant must show that counsel's performance was deficient' and that defendant must also show prejudice). Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner."
Chandler v. United States, 218 F.3d 1305, 1315 n. 15 (11th Cir. 2000), cert. denied, 531 U.S. 1204, 121 S.Ct. 1217,149 L.Ed.2d 129 (2001). "`"[T]he cases in which habeas corpus petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between,"' . . . and `[c]ases in which deliberate strategic decisions have been found to constitute *Page 500 
ineffective assistance are even fewer and farther between.'"Williams v. Head, 185 F.3d 1223, 1227 (11th Cir. 1999), cert. denied, 530 U.S. 1246, 120 S.Ct. 2696, 147 L.Ed.2d 967 (2000), quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995), cert. denied, 516 U.S. 982, 116 S.Ct. 490, 133 L.Ed.2d 417
(1995), and Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), cert. denied, 513 U.S. 1115, 115 S.Ct. 911,130 L.Ed.2d 793 (1995).
 "`Our strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel.' Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998). Accord, e.g. Spaziano [v. Singletary], 36 F.3d [1028] at 1040 [(11th Cir. 1994)]. (`[T]he more experienced an attorney is, the more likely it is that his own experience and judgment in rejecting a defense without substantial investigation was reasonable under the circumstances.') (quoting Gates v. Zant, 863 F.2d 1492, 1498 (11th Cir. 1989)); Birt v. Montgomery, 725 F.2d 587, 600 (11th Cir. 1984) (en banc). It matters to our analysis that [trial counsel] is an experienced criminal defense attorney."
Williams v. Head, 185 F.3d at 1228-29.
Appellate counsel Vinson testified that she had been practicing law for 19 years, that she had participated in approximately 40 capital-murder trials, and that she had worked on 20 to 25 appeals from capital-murder convictions. She stated that she attended seminars on capital-murder issues, that she had contacted the Equal Justice Initiative of Alabama for help in preparing the appellate brief in Brooks's case, and that she based her method of writing the brief on an article written by Judge John Godbold, a former judge on the Eleventh Circuit Court of Appeals, on appellate brief writing entitled "Twenty Questions and Twenty Minutes — Effective Advocacy on Appeal." Vinson testified that Attorney Boudreaux turned over his entire case file to her and that she thoroughly reviewed the file and the record of the trial proceedings. Based on her experience she believed that it was best to raise only those claims on appeal that were meritorious and not to use the "scattergun approach" used by some attorneys. Vinson raised five issues in her appellate brief to this Court.[6]
In its order denying Brooks's Rule 32 petition, the circuit court made the following general findings about Vinson's performance on direct appeal:
 "Ms. Vinson testified that, upon being appointed, she thoroughly reviewed the record, obtained trial counsel's files, and made a deliberate decision to restrict the issues raised to those she felt had the most merit and, therefore, the best chance of succeeding. Her strategy as an appellate lawyer was, in part, based upon an article written by the Honorable Judge Godbold regarding effective brief writing. Ms. Vinson specifically described this approach as follows: `[W]hen you raise your issues on [appeal], you choose the issues that you feel are the most effective and you pursue those issues instead of putting boilerplate issues out.' The expressed strategy of counsel can certainly not be labeled unreasonable. In fact, the `process *Page 501 
of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."' Smith v. Murray, 477 U.S. 527, 536 (1986), citing Jones v. Barnes, 463 U.S. 745, 751-52 (1983). . . ."
(C.R. 34-35.)
 A.
Specifically, Brooks argues that Vinson should have argued that trial counsel was ineffective for failing to pursue an intoxication defense.
The record of the Rule 32 proceedings shows that Boudreaux, one of Brooks's trial counsel, testified by deposition in lieu of appearing at the Rule 32 evidentiary hearing. Rule 32.9(a), Ala.R.Crim.P. Boudreaux said that he had represented approximately 12 defendants charged with capital murder and that two of those defendants had been sentenced to death. Boudreaux was not questioned as to why he chose not to raise an intoxication defense.
Gomany, Brooks's other trial counsel, testified at the evidentiary hearing that he had practiced law for 26 years, that approximately 80 percent of his law practice was criminal-defense work, that he had worked in the district attorney's office, and that as a criminal-defense attorney had represented about 10 or 12 defendants charged with capital murder. He said that the evidence against Brooks was overwhelming and that trial counsel's strategy was to cast doubt on the evidence. Gomany did say in response to a question posed by the assistant attorney general that he had never seen an intoxication defense succeed in Jefferson County. However, defense counsel did not question either attorney as to why counsel chose not to pursue an intoxication defense at trial.
The circuit court made the following findings on this issue:
 "Neither of Brooks's trial attorneys was asked why they did not pursue the issue of alcoholism or intoxication on the night of the crime. `An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of [competent representation]. Therefore, "where the record is incomplete or unclear about [counsel's] actions, [the Court] will presume that [they] did what [they] should have done, and that [they] exercised reasonable professional judgment."' Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (en banc), quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999); see also Grayson v. Thompson, [257 F.3d 1194, 1216] (11th Cir. 2001) (stating that `we must indulge the strong presumption that counsel's conduct was reasonable in the absence of evidence regarding his reasons for failing to raise such a challenge'). It may very well be that trial counsel did not pursue evidence of alcoholism and intoxication because information received from Brooks did not indicate the existence of any such evidence. This possibility becomes probable when the defendant's self-reports regarding the issue — as reflected by the record — are considered. For example, the presentence report reflects that Brooks and his mother relayed information regarding his alcohol use that directly contradicts the evidence presented during these proceedings. Specifically, the relevant portion reads as follows: `He reported to have used marijuana on only one occasion at the age of 16. He reports to be a casual drinker. His mother had no information regarding any type of drug use history and stated that her son does drink on a social basis.' Dr. Rosecrans's evaluation demonstrates *Page 502 
that Brooks reported `no history of drug or alcohol abuse' and that he `engaged only in social drinking.' There has been no evidence presented that Brooks informed his attorneys of anything to the contrary."
(C.R. 62-64) (emphasis in original). Brooks did not pursue this claim at the evidentiary hearing; therefore, we presume that counsel's performance was reasonable. See Grayson v. Thompson,257 F.3d at 1218.
Moreover, the record of the trial proceedings reflects that Brooks reported that he was a casual drinker. Brooks's mother said the same. Counsel also noted at the hearing on the motion for a new trial that Brooks's mother was not cooperative and that she did not appear at trial until the middle of the trial. As we stated in Jenkins v. State, [Ms. CR-97-0864, February 27, 2004] ___ So.2d ___, ___ (Ala.Crim.App. 2004), quoting Commonwealthv. Bond, 572 Pa. 588, 609-10, 819 A.2d 33, 45-46 (2002):
 "`The reasonableness of counsel's investigation and preparation for the penalty phase, of course, often depends critically upon the information supplied by the defendant. E.g. Commonwealth v. Uderra, 550 Pa. 389, 706 A.2d 334, 340-41 (1998) (collecting cases). Counsel cannot be found ineffective for failing to introduce information uniquely within the knowledge of the defendant and his family which is not provided to counsel.'"
We cannot say that counsel's performance fell outside the wide range of professional conduct. See Strickland.
 B.
Brooks also argues that Vinson should have argued that his trial counsel was ineffective for not adequately investigating and presenting a "reasonable" defense strategy.
The circuit court made the following findings on this claim:
 "To properly consider the representation Brooks was provided during his trial for capital murder, one must first take into account the case against him. Any theory of defense will obviously be formulated based upon the strength and type of the evidence the State is expected to present. In this case, the evidence against Brooks was accurately described by trial counsel as `overwhelming.' . . .
 "Based upon the strength of the evidence against their client, trial counsel developed a `reasonable doubt' defense specifically directed at the charges elevating the murder to a capital offense — burglary, rape, and robbery. . . . Counsel agreed that the `essential theme of the defense was maintaining to the jury that there was a substantial number of . . . reasonable doubts and . . . asking the jury not to convict . . . Christopher Brooks, based on circumstantial evidence.'
 "Prior to settling on this strategy, the record demonstrates that counsel sufficiently investigated the case by, among other things, meeting with their client, examining the State's evidence, meeting with the prosecutor, and talking to witnesses expected to testify on behalf of the State. In rejecting, on direct appeal, a claim that trial counsel failed to sufficiently investigate the case, the Alabama Supreme Court found as follows:
 "`In support of his argument, the defendant argues that his trial counsel failed to properly investigate the case in preparation for trial. The defendant argues that trial counsel should have investigated the background of the defendant and the circumstances of the crime; that counsel should have *Page 503 
hired a private investigator and DNA experts to contest the State's evidence; and that counsel should have contacted character witnesses and witnesses named in the police report, but did not. At the hearing, trial counsel testified that his trial preparation was adequate. Counsel had complete access to the prosecutor's files; counsel interviewed all essential witnesses; counsel, as a matter of trial strategy, agreed with the prosecutor that during the sentencing phase of the trial he would not present testimony that the defendant was of a good character, in exchange for the prosecutor's agreement not to present victim-impact evidence; and counsel chose not to use DNA experts to contest the semen sample, because the defendant had admitted to having had intercourse with the victim on the night of the murder, and, instead, argued that no rape had occurred. Counsel testified that the psychiatric evaluation of the defendant showed no evidence of emotional, mental, or substance abuse problems; and that the `phantom defendant' defense was not a viable alternative, given that the defendant's bloody fingerprints were found in the victim's apartment.'
 "Ex parte Brooks, 695 So.2d 184, 191 (Ala. 1997). When asked specifically why he did not enlist the assistance of an investigator to help with preparation for trial, counsel testified as follows:
 "`I didn't request any myself and I wasn't aware of anything that I thought an investigator could do to aid in the case. I don't particularly care for investigators, and unless you have a very specific result oriented task to give them, I prefer to find out things on my own.'
 "Counsel's investigation and preparation were sufficient. Moreover, the decision not to retain an investigator was not `outside the wide range of professionally competent assistance.'
 "The record reveals that other theories and approaches were considered by trial counsel prior to settling on the theme described above. For example, over the objection of Brooks — and despite the fact that nothing in their personal interaction indicated the existence of any mental health problems — counsel had Brooks evaluated by mental health professionals on the chance that something useful might result. . . . Counsel additionally considered injecting the possibility of a `phantom defendant' into the proceedings, but justifiably — based upon the overwhelming evidence to the contrary — did not think such a defense would be reasonable. Moreover, counsel was concerned that such an approach would damage any credibility the defense hoped to gain in the eyes of the jury. . . .
 "There is no doubt that counsel did not exhaustively investigate every single detail and aspect of this case. The law, however, does not require such and, in fact does not even require an investigation into every possible theory of defense. Moreover, because the chosen theory of defense was reasonable, `it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of [a reasonable doubt defense] was not a deliberate choice between [it and some other course].' Chandler v. United States, 218 F.3d 1305, 1316, n. 16 (11th Cir. 2000) (en banc). The `inquiry is limited to whether [the chosen defense] might have been a reasonable one.' Id., citing Harich v. Dugger, 844 F.2d 1464, 1470-71 (11th Cir. 1988) (en banc); Bonin v. Calderon, 59 F.3d 815, 838 (9th Cir. 1995). In the *Page 504 
Court's opinion, it was reasonable. Brooks, who has the burden of proof in these proceedings, has failed to prove otherwise."
(C.R. 42-50.)
We agree with the circuit court; its findings are supported by the record. The record shows that Boudreaux and Gomany, both very experienced criminal-defense attorneys, investigated the case and examined the pros and cons of the available defenses — defenses that were greatly diminished by the overwhelming evidence of Brooks's guilt. Counsel chose to pursue a "reasonable doubt" defense as to the underlying charges. Such a defense was not unreasonable. See Bertolotti v. State, 534 So.2d 386, 387 (Fla. 1988) ("His lawyers' decision to present a `reasonable doubt' defense to the underlying felonies of robbery, sexual battery and burglary was reasonable under the circumstances."). As we stated in Jones v. State, 753 So.2d 1174, 1191 (Ala.Crim.App. 1999):
 "While counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, `this duty only requires a reasonable
investigation.' Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir. (Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland [v. Washington], 466 U.S. [668] at 691, 104 S.Ct. [2052] at 2066 [(1984)]; Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Counsel's obligation is to conduct a `substantial investigation into each of the plausible lines of defense.' Strickland, 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis added). `A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made.' Id., 466 U.S. at 686, 104 S.Ct. at 2063.
 "`The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.'
"Id., 466 U.S. at 691, 104 S.Ct. at 2066."
Based on the facts in this case, we cannot say that trial counsel's performance fell outside the wide range of professional conduct. See Strickland v. Washington, supra. Therefore, appellate counsel's performance was not deficient.
 IV.
Brooks argues that the State violated Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose evidence he says was exculpatory and that his appellate counsel's performance was deficient for failing to present this claim on appeal.
 "To prove a Brady violation, a defendant must show that `"(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial."' Johnson v. State, 612 So.2d 1288, 1293 (Ala.Cr.App. 1992), quoting Stano v. Dugger, 901 F.2d 898, 899
(11th Cir. 1990), cert. denied, Stano v. Singletary, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). See Smith v. State, 675 So.2d 100 (Ala.Cr.App. 1995). `"The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable *Page 505 
probability' is a probability sufficient to undermine confidence in the outcome."' Johnson, 612 So.2d at 1293, quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481
(1985)."
Freeman v. State, 722 So.2d 806, 810 (Ala.Crim.App. 1998).
At the evidentiary hearing on his Rule 32 petition, Brooks presented the testimony of two police officers who had collected evidence at the scene of the murder. Officer Marti Abernathy testified that she discovered a pair of blue jeans with reddish stains in a trash can near the washing machines at the apartment complex where the victim lived. In another trash can near the same location Abernathy found a yellow T-shirt with reddish spots. She testified:
 "Well, on the scene I actually believed that they were some sort of an oily substance, and not having seen a lot of clothing items with a lot of blood, I wasn't sure whether it could be blood or not. And I was not going to make that decision based on my position with the police department and my length of service at that time [approximately 7 months]. I was not going to make that call."
(R. 26.) Abernathy stated that the evidence was turned over to a evidence technician. This testimony was corroborated by Officer Benjamin L. Sutton of the Homewood Police Department. Those items of evidence were not in the case file.
Chief Deputy District Attorney Roger Brown testified that the policy of his office was to maintain an open case file on all capital-murder cases and that everything in the prosecution files was made available to Brooks before trial.
The circuit court made the following findings on this issue:
 "Brooks has failed to sufficiently describe how counsel could have used this information in such a way that would have possibly altered the outcome of his trial. He only sets forth two specific uses for the information. Neither, however, would have had any effect on the jury's verdict.
 "First, he contends that counsel could have used the information `to show that perhaps the police did a shoddy investigation, and after they zeroed in on this defendant they did not pursue any other leads.' According to Brooks's own claim, however, `the police department destroyed or discarded [the items] at the outset of the investigation.' Because Brooks was not a suspect at the `outset of the investigation,' any motive for `destroying or discarding' the clothing could not have been the result of an alleged collective and exclusive focus upon him as the sole suspect.
 "Second, Brooks asserts that counsel `would have asked the judge for a negative inference instruction to the jury, along the lines of a missing witness instruction, i.e., there is an adverse inference against the State for the failure to produce obviously important information.' While counsel may have requested such an instruction, based upon the information before the Court, he would not have been entitled to it. Moreover, the characterization of the items as `obviously important' is not supported by the record. In fact, the record establishes the contrary. Finally, even assuming counsel had used the information exactly as Brooks now says they should have, there can be no serious contention that it would have altered the outcome. Nothing about the stained clothing in any way lessens the overwhelming evidence against Brooks. For example, it does not change the fact that his bloody fingerprint was discovered on the victim's *Page 506 
bedroom doorknob or that his palm print was lifted from her ankle. Based upon the testimony of Abernathy and Sutton, and the overwhelming evidence of Brooks's guilt, the Court finds that any focus on the `missing' clothing by trial counsel would have been futile."
(C.R. 54-56.)
Even if we were to conclude that the State suppressed evidence in violation of Brady, we can conceive of no scenario in which this alleged exculpatory evidence would have been material to the case, given the overwhelming evidence of Brooks's guilt. There is no reasonable probability that the result of the proceedings would have been different. See Jenkins, supra. As the Illinois Supreme Court stated in People v. Barrow, 195 Ill.2d 506,749 N.E.2d 892, 255 Ill.Dec. 410 (2001), cert. denied, Barrow v.Wells, 534 U.S. 1067, 122 S.Ct. 669, 151 L.Ed.2d 583 (2001):
 "The defendant contends that the State violated Brady by failing to disclose to the defense all the evidence described above, and that a new trial is therefore warranted. We find no basis for a new trial on this claim. Assuming, without deciding, that the evidence exists, the prosecution's failure to disclose it would not warrant a new trial, under the circumstances present here. The suppressed evidence must be material if it is to establish a Brady
violation. In this context, evidence will be deemed material only if there exists a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. . . . As discussed above, the evidence of defendant's guilt was overwhelming. In light of the overwhelming evidence of guilt in this case, we conclude that there is no reasonable probability that, even if all the allegedly suppressed evidence had been disclosed to the defense, the result of the defendant's trial would have been different."
195 Ill.2d at 537, 749 N.E.2d at 911-12, 255 Ill.Dec. at 429-30. See also Gettings v. McKune, 88 F.Supp.2d 1205 (D.Kan. 2000);Grandison v. Corcoran, 78 F.Supp.2d 499 (D.Md. 2000); UnitedStates v. Yang, 74 F.Supp.2d 724 (N.D.Ohio 1999); Turner v.State, 684 N.E.2d 564 (Ind.Ct.App. 1997); Squires v. Dugger,794 F.Supp. 1568 (M.D.Fla. 1992).
Brooks also presented evidence that a statement made by Tony Franklin, a friend of the victim's, was missing from the district attorney's case file. Franklin, a coworker of the victim's, gave a statement to police after he had gone by the victim's apartment on the day her body was discovered. Franklin said that he climbed up to her balcony and looked through the window. He offered several theories of what might have happened to the victim.
The circuit court made the following findings on this claim:
 "When he was questioned about the Franklin interview during these proceedings, Mr. Gomany stated that he did not see the relevancy of the Franklin statement considering the `other . . . very strong physical evidence.' He additionally testified as follows:
 "`And if you had something like that, put somebody like that on trial in front of a jury if you are a trial lawyer, it may just inflame them all the more. So you have got to be very careful about bringing up things that are not, should not be brought up or not relevant or wouldn't matter anyway because it will just get the jury more mad at you to begin with.'
 "A defense based upon the theory that a `third party' broke into the apartment and murdered the victim in this case simply would not have been viable, and advancing such a theory certainly would *Page 507 
not have altered the outcome. This is especially true considering counsel's testimony that `a lot of the thrust of [their] defense was not to lose any credibility that [they] had with [the jury].' For example, counsel would have been forced to take the position that the `phantom defendant,' who broke in through the window, took the time to clean up following the murder — including wiping up the blood and making up the bed. Moreover, this individual did so despite the fact that two young men were asleep on the floor in the next room. Counsel would additionally have had to convince the jury that the `phantom defendant' had taken the time, after committing a brutal and heinous murder, to lock the window and replace the screen. Leaving aside the extremely damning physical evidence, an explanation would have been required for why, when the body was discovered, all windows and doors of the apartment were locked — including the dead bolt — and Christopher Brooks had the key. The Court cannot even imagine how counsel might have reconciled their client's proposed innocence with the indisputable fact that he absconded with numerous items belonging to the victim. Indeed, he spent the next few days driving her car, using her credit cards, forging and cashing her checks, and pawning numerous items taken from the apartment."
(C.R. 56-59.)
We can envision no set of facts that would make Franklin's statement material, especially given the overwhelming evidence of Brooks's guilt and the fact that Franklin's alternative theory conflicted with the forensic evidence that had been gathered from the scene of the murder. We are confident that there is no reasonable probability that the result of the proceedings would have been different had this evidence been made available to the defense. See Jenkins, supra.
 V.
Brooks argues that his appellate counsel failed to argue that his trial counsel's performance was deficient at the penalty phase of his capital trial. He argues that counsel failed to investigate and to present mitigation evidence. Specifically, he argues that counsel failed to present evidence that he was intoxicated at the time of the murder and evidence of his history of alcoholism, his good character, and the fact that people cared about him.
As previously stated, Brooks failed to question counsel as to why they did not rely on an intoxication defense. Therefore, we must presume that counsel's actions in this regard were reasonable. See Grayson v. Thompson, supra.
 "`When the ineffective assistance claim relates to the sentencing phase of the trial, the standard is whether there is "a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland [v. Washington], 466 U.S. [668,] at 695, 104 S.Ct. [2052,] at 2069 (1984).'"
Jenkins, ___ So.2d at ___, quoting Stafford v. Saffle,34 F.3d 1557, 1564 (10th Cir. 1994), cert. denied, 514 U.S. 1099,115 S.Ct. 1830, 131 L.Ed.2d 751 (1995).
The circuit court made the following findings on this claim:
 "Brooks additionally asserts that trial counsel were ineffective for failing to inform the jury `about his good character.' According to Brooks, `[h]ad counsel investigated [his] good character, they would have discovered that he had attributes *Page 508 
that were recognized and appreciated by those who knew him.' The record plainly reflects, however, that trial counsel was aware of available `character' witnesses, but made a strategic decision not to call them. Specifically, the transcript from the hearing on the motion for a new trial, in relevant part, reads as follows:
 "Q [Ms. Vinson]: Did Mr. Brooks indicate to you during the course of the trial that there were certain people in the courtroom on his behalf that could be called as character witnesses, if need be?
 "A [Mr. Boudreaux]: Yes, he did. And I explained to him at the time if he wanted to interject character as an issue, that it would make the proceedings ludicrous. The nature of the allegations regardless of whether somebody was of good character or not, the overwhelming evidence — and of course, opening up the door to some of the things in his background which would show that perhaps he was of less than honorable character. I did everything in my power to prevent that, and I think I successfully did prevent the jury from knowing about his criminal history, even though it wasn't [what] we would call serious, it certainly was a criminal history which would not have helped. And I kept all of that out, if I recall.
". . . .
 "Q [Prosecutor]: Had you put character witnesses on the stand, you understood and I am sure that that would have opened the door for cross-examination of those character witnesses to the question had you heard he had been arrested for burglary in Watertown, New York?
 "A [Mr. Boudreaux]: I knew that by the time you finished with the character witness on cross examination that the defense might as well close up shop?
 "Plainly, the decision to call the witnesses in question was reasonable and did not amount to deficient performance. `Which witnesses, if any, to call, and when to call them is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess.' Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995). The Court will not `second guess' trial counsel's decision.
 "Moreover, the Court of Criminal Appeals considered and recognized, as legitimate, the strategic decision in question when reviewing this case on direct appeal. Specifically, that Court held that `trial counsel's decision not to put on any character evidence was a strategic decision and one that was probably wise in this case — in light of the fact that there was evidence at the hearing that the state would have produced a lot of victim impact evidence had the appellant presented his character witnesses.' Brooks v. State, 695 So.2d 176, 181 (Ala.Crim.App. 1996). Trial counsel were not ineffective for failing to inform the jury about Brooks's `good character.' Appellate counsel was, therefore, not ineffective for not presenting the issue in the manner Brooks has during these proceedings.
 "Brooks additionally contends that counsel were ineffective in presenting `no witnesses to testify that they cared what happened to him or that they cared about him at all.' Again, the record plainly reflects that the lack of such evidence was a direct result of a deliberative strategy on the part of trial counsel. The testimony of Mr. Boudreaux, conclusively establishing this fact, was forthcoming during the hearing on the *Page 509 
motion for a new trial and reads as follows:
 "`My main concern was whether or not I was going to open the door for what I considered to be some very damaging potential testimony by the victim's family who, as you may or may not know, were here in mass during the trial, crying, sniffling, filling the courtroom with themselves and their supporters.
 "`As you well know, the law is now that victims under certain circumstances can be heard. I had a difficult time even getting Mr. Brooks's mother to attend the whole trial. In fact, she didn't get here until the trial was underway. We were outnumbered in the courtroom so to speak. It is a very sympathetic case on behalf of the victim.
 "`And I might point out that the court even called the Attorney General's office so that the lawyers might speak with their expert down there on death penalty cases so that I might structure how I wanted to handle the mitigation hearing so as to avoid allowing — to avoid opening the door for [the prosecutor] to parade the victim's family up here to talk about how wonderful a person she was and drive even more nails into the coffin in this case.'
 "In addition, the Assistant District Attorney, who prosecuted the case, stated the following for the record during the hearing on the motion for new trial:
 "[Prosecutor]: I just wanted to say one thing about the mitigation phase of this trial since I think it may not be clear from the trial record, and since Ms. Vinson has mentioned that, I think she used the terminology that there was a very minimal or brief statement by the defendant's mother during the punishment phase of the trial in mitigation. The record may not reflect but I am sure that the Court will recall that prior to the beginning of that stage of the proceedings we had an extensive discussion in chambers with regard to Payne v. Tennessee, [501 U.S. 808 (1991),] even to the point which I think Mr. Boudreaux mentioned calling the Attorney General's Office.
 "`Out of an abundance of caution, even though Payne v. Tennessee is ambiguous as to whether the State can do this in [its] case in chief on the penalty phase, we in an effort to bend over backward to try this case clean, we won't go into any of the what a wonderful person [the victim] was unless the defense puts somebody on the witness stand to sob and talk about how wonderful the defendant is. Then clearly Payne v. Tennessee will be applicable and we would be entitled to do that.
 "`So, I think the brief or minimal testimony offered by the defendant's mother on behalf in mitigation emanated from that discussion and then from the fear of what was to follow pursuant to the provisions of Payne v. Tennessee. And I don't think that's on the record during the trial, and I wanted to make it clear now. Thank you.'
 "The Court will not find that counsel acted unreasonably in deciding to present the case in a manner that prevented the admission of `some very damaging testimony by the victim's family.' Indeed, counsel — who, as noted, had extensive trial experience and was, of course, present in the courtroom throughout the trial — characterized victim impact testimony as `his main concern.' Disregarding the question of whether the prosecution *Page 510 
was, in fact, restricted by what the defense chose to present, trial counsel was successful in keeping victim impact evidence from the jury. Again, `[w]hich witnesses, if any, to call, and when to call them is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess.' Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995). The Court will not `second guess' trial counsel's decision. Because Brooks has failed to establish deficient performance on the part of trial counsel in relation to the penalty phase, his allegations against appellate counsel must necessarily fail."
(C.R. 65-71.)
Counsel testified at the hearing on the motion for a new trial that the decision not to present character witnesses was a strategic decision because the State would have rebutted this testimony with witnesses who would have presented a great deal of victim-impact evidence. Boudreaux said that he and cocounsel tried everything they knew to keep the victim's family from testifying — testimony they believed would have been far more damaging to Brooks than the character evidence would have been helpful.
 "Strickland cautions that `there are countless ways to provide effective assistance in a given case' and that `even the best criminal defense attorneys would not defend the particular client the same way.' 466 U.S. at 689, 104 S.Ct. 2052. Among the `virtually unchallengeable' tactical decisions left to the judgment of trial counsel are determinations regarding the defense strategy adopted at trial."
Gluzman v. United States, 124 F.Supp.2d 171, 174 (S.D.N.Y. 2000).
The record of the penalty phase indicates that the State presented an expert who testified extensively about the graphic details of the murder to support the aggravating circumstance that the murder was especially heinous, atrocious, or cruel as compared to other capital murders. The State also presented a blood-spatter expert who testified to the significance of the large amount of blood spatters found at the scene of the murder. The evidence of the horrific nature of the murder was extremely damaging. Defense counsel, in an attempt to prohibit the State from presenting victim-impact witnesses, chose not to present character evidence. Brooks's mother testified that Brooks had not seen his father since he was two months old and that Brooks had dropped out of school in the eleventh grade.[7] Defense counsel in his closing argument at the penalty phase argued residual doubt.
At the Rule 32 hearing Brooks presented the testimony of his mother, his stepfather, and several other relatives and friends. His mother testified that Brooks had had no contact with his father while growing up, that Brooks did not live with her for most of his childhood, and that he dropped out of school in the eleventh grade. The stepfather testified that Brooks had lived with him and Brooks's mother for four months and that he believed that Brooks had a problem with alcohol. Several other relatives and friends testified that Brooks had a good character.
Dr. William Beidleman, a clinical psychologist, testified that after evaluating Brooks it was his opinion that Brooks used alcohol excessively, that he had symptoms consistent with alcohol abuse, and that he was intoxicated at the time of the murder. In rebuttal the State presented the testimony *Page 511 
of Dr. Glen King, a forensic psychologist. Dr. King did not agree with Dr. Beidleman's findings. Dr. King testified that the 22-page detailed statement Brooks gave to police about the details of the murder tended to show that Brooks was not so intoxicated that he could not form an intent to kill.
The record indicates that the expert testimony as to Brooks's possible intoxication was conflicting; as a result, the circuit court chose to give more credence to the State's expert. Also, the record shows that Brooks's mother and stepfather had had little contact with Brooks while he was growing up and as a result presented little information that would have helped Brooks. Counsel also explained that they had specifically elected not to present character evidence because of the agreement with the State that the State would not present victim-impact evidence if Brooks would not present character evidence. Based on the unique facts presented in this case, we conclude that counsel's decision not to put on character evidence was a strategic decision to mitigate the potential damaging evidence that would have been presented against Brooks. As we stated in our opinion on direct appeal:
 "[T]rial counsel's decision not to put on any character evidence was a strategic decision and one that was probably wise in this case — in light of the fact that there was evidence at the hearing that the state would have produced a lot of victim impact evidence had the appellant presented his character witnesses."
Brooks, 695 So.2d at 181. As the Colorado Supreme Court aptly noted in Davis v. People, 871 P.2d 769, 773 (Colo. 1994):
 "[W]hen faced with overwhelming aggravating circumstances, trial counsel reasonably may conclude that the testimony of certain character witnesses would be of little help to the defense. See Strickland, 466 U.S. at 699, 104 S.Ct. at 2070-2071. This is particularly true if such testimony would open the door to presentation of damaging evidence by the prosecution."
Accordingly, we cannot say that counsel's performance in not putting on character evidence was deficient but was the result of a strategic decision.
Moreover, Brooks cannot satisfy the second prong of theStrickland test because he can show no prejudice resulting from counsel's decision not to put on character evidence. The United States Supreme Court in Wiggins v. Smith, 539 U.S. 510,123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), when reviewing a claim of ineffective assistance of counsel at the penalty phase of a capital trial stated:
 "In Strickland [v. Washington, 466 U.S. 668
(1984)], we made clear that, to establish prejudice, a `defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id., at 694, 104 S.Ct. 2052. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."
539 U.S. at 534, 123 S.Ct. 2527.
In keeping with the Wiggins v. Smith decision, the circuit court at the hearing on the Rule 32 petition reweighed the aggravating circumstances against the alleged mitigating evidence that was not presented at trial and made the following findings:
 "Here, there is no reasonable probability that the balance of aggravating and mitigating circumstances that led to the imposition of the death penalty in this case would have been different had counsel introduced the evidence compiled *Page 512 
and presented in [these] proceedings.' [Grayson v.] Thompson, [257 F.3d 1194, 1228]. Brooks's claim is, therefore, rejected.
 "In determining that death was the appropriate sentence in this case, the Court found the existence of two aggravating circumstances: (1) that the murder was committed during the commission of a rape, robbery, and burglary, and (2) that the murder was especially heinous, atrocious, or cruel when compared to other capital offenses. In support of the latter finding, the Court set forth the following:
 "`Dr. Gary Simmons noted an abrasion in deceased's vaginal canal that had hemorrhaged and as noted above the jury found that the deceased had been raped, the Court concurs in the finding of forcible intercourse.
 "`Evidence presented at the guilt and sentencing phases before the jury indicate that the deceased was bludgeoned to death, being struck multiple times in the head with a blunt object, evidence was consistent with a barbell as alleged by the State. Dr. Simmons could not testify as to the order of the blows with reference to their situs on deceased's face and head but stated that the deceased was alive throughout the bludgeoning episode.
 "`Though it is impossible to know when the deceased lost consciousness the forcible intercourse coupled with the repeated bludgeoning of [the victim] in the Court's view, was especially heinous, atrocious or cruel compared to other capital offenses.'
 "This was a brutal crime committed against a young woman by someone she had graciously allowed into her home. Nothing presented on behalf of Brooks during these proceedings would have outweighed the aggravating circumstances found to exist. For example, based upon the nature of the crime, the testimony of friends and family regarding Brooks's `nonviolent' nature would not have been effective. Likewise, any contention that Brooks committed this crime as a result of `acute intoxication' — or any other assertion that he was not in control of himself — is directly refuted by the facts of the case, including his behavior following the murder.
 "`In sum, [the Court] find[s] no reasonable probability that the balance of aggravating and mitigating circumstances underling [Brooks]'s death sentence would have been different if the judge and jury had heard the [evidence presented during these proceedings].' Grayson v. Thompson, [257 F.3d 1194, 1228] (11th Cir. July 16, 2001). His claim is, therefore, denied."
(C.R. 70-74.)
In reviewing Brooks's claim of prejudice under Strickland we have independently reweighed the aggravating circumstances that were found in this case against the alleged mitigating circumstances that were not presented at trial. See Wiggins v.Smith. We, like the circuit court, are confident that death was the appropriate sentence in this case and that any of the alleged mitigating evidence that was not presented at trial but that was presented at the Rule 32 proceedings would not have effected the result.
 VI.
Brooks argues that appellate counsel was ineffective for not arguing that trial counsel failed to ensure that Brooks was present at all stages of his capital trial. Brooks argues that he was not present during an in chambers conference held after the jury returned its guilty verdict. *Page 513 
The circuit court stated the following concerning this claim:
 "No evidence was presented in support of this claim. None of the three attorneys — all of whom testified during these proceedings — were questioned regarding the issue. Under Rule 32.3, of the Alabama Rules of Criminal Procedure, Brooks has the burden of proof. In failing to present any evidence, he had failed to meet that burden. See Grayson v. Thompson, [257 F.3d 1194] (11th Cir. 2001). . . .
 "Moreover, because the record does not establish that Brooks was, in fact, absent at the time in question, assuming the claim had been raised on appeal, it would have failed. The appellate courts have rejected similar claims as follows:
 "There is no indication that the appellant was present at these latter two hearings, and we are unable to glean from the conversations during the hearings whether the appellant was present.
 "As to these pretrial hearings, which the appellant argues were held in her absence and at which the State argues the appellant was present, it should be noted that this court ordinarily will not presume error from a silent record. Atchison v. State, 565 So.2d 1186 (Ala.Cr.App. 1990)."
(C.R. 75.) Brooks did not question his appellate attorney as to why this claim was not raised; therefore, we presume that appellate counsel's performance in this regard was reasonable. See Grayson v. Thompson, supra.
 VII.
Brooks also argues that his death sentence violates the United States Supreme Court's decision in Ring v. Arizona,536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because the jury did not determine the aggravating circumstances that subjected Brooks to the death penalty.
Brooks did not present this issue to the circuit court; it is raised for the first time in his appellate brief. "New claims presented for the first time on appeal are not properly before the appellate court." Harris v. State, [Ms. CR-01-1748, October 29, 2004] ___ So.2d ___ (Ala.Crim.App. 2004).
Moreover, we note that the Supreme Court's decision in Ring
does not apply retroactively to cases on collateral review. SeeMcWilliams v. State, 897 So.2d 437 (Ala.Crim.App. 2004). The United States Supreme Court in Schriro v. Summerlin,524 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), specifically held that its decision in Ring did not apply to death cases that were already final at the time that the decision was announced. Brooks's case was final on May 13, 1997, when we issued the certificate of judgment.
However, we note that, even if Ring were applicable here, the jury convicted Brooks of murdering the victim during the course of a rape, a robbery, and a burglary. The felonies that elevated the murder to capital murder and made it punishable by death were found by the jury to exist beyond a reasonable doubt. Thus, Brooks's death sentence does not violate Ring. See Ex parteWaldrop, 859 So.2d 1181 (Ala. 2002), cert. denied, 540 U.S. 968,124 S.Ct. 430, 157 L.Ed.2d 314 (2003).
 VIII.
Brooks alleges that the claims that were raised by appellate counsel on direct appeal were inadequate and incomplete.
This claim was raised in Brooks's Rule 32 petition. However, the record shows that on October 29, 1998, the circuit court issued an order stating that this claim was *Page 514 
due to be dismissed for lack of specificity if the claim was not amended within 14 days from the issuance of the order. (C.R. 296-97.)[8] The claim was not amended. The circuit court correctly found that these claims failed to comply with the specificity requirements of Rule 32.6(b), Ala. R.Crim.P.
 IX.
Brooks argues that this Court should consider the cumulative effect of the ineffective-assistance claims when assessing whether his counsel's performance was deficient. He contends that this analysis is mandated by the Strickland decision.
Other states and federal courts are not in agreement as to whether the "cumulative effect" analysis applies to Strickland
claims. As the Supreme Court of North Dakota noted in Garcia v.State, 678 N.W.2d 568, 578 (N.D. 2004):
 "Garcia argues that even if trial counsel's individual acts or omissions are insufficient to establish he was prejudiced, the cumulative effect was substantial enough to meet Strickland's test. See Williams v. Washington, 59 F.3d 673, 682 (7th Cir. 1995) (`In making this showing, a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet Strickland's test'); but see Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990) (`cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own')."
See also Holland v. State, 250 Ga.App. 24, 28, 550 S.E.2d 433,437 (2001) ("Because the so-called cumulative error doctrine is inapplicable, each claim of inadequacy must be examined independently of other claims, using the two-prong standard ofStrickland v. Washington." (footnote omitted)); Carl v.State, 234 Ga.App. 61, 65, 506 S.E.2d 207, 212 (1998) ("Georgia does not recognize the cumulative error rule."); Fisher v.Angelone, 163 F.3d 835, 852 (4th Cir. 1998) ("Not surprisingly, it has long been the practice of this Court to individually assess claims under Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See, e.g., Hoots v.Allsbrook, 785 F.2d 1214, 1219 (4th Cir. 1986) (considering ineffective assistance claims individually rather than considering their cumulative impact.).").
We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel. However, the Alabama Supreme Court has held that the cumulative effect of prosecutorial misconduct necessitated a new trial in Ex parte Tomlin, 540 So.2d 668, 672
(Ala. 1988) ("We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings."). Also, in Ex parte Bryant, [Ms. 1990901, June 21, 2002] ___ So.2d ___ (Ala. 2002), the Supreme Court held that the cumulative effect of errors may require reversal.
If we were to evaluate the cumulative effect of the ineffective assistance of counsel claims, we would find that Brooks's substantial rights were not injuriously affected. See Bryant
and Rule 45, Ala. R.App.P. *Page 515 
For the foregoing reasons, we affirm the circuit court's denial of Brooks's petition for postconviction relief.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.
[1] Brooks's petition is not properly verified as required by Rule 32.6(a), Ala.R.Crim.P. However, recently in Smith v.State, 918 So.2d 141 (Ala.Crim.App. 2005), we held that the failure to comply with the verification requirements of Rule 32.6(a) is not a defect that operates to deprive the circuit court of subject-matter jurisdiction to consider the merits of a Rule 32 petition; therefore, the defect is waived if not presented to the court.
[2] Brooks's appellate brief is similar to the Rule 32 petition filed in the circuit court. There is no reference in Brooks's brief to the detailed order issued by the circuit court.
[3] On direct appeal, we rejected Brooks's claim that the reasonable-doubt jury instruction was erroneous.695 So.2d at 182. The Alabama Supreme Court likewise rejected this claim.695 So.2d at 192.
[4] On direct appeal, we rejected Brooks's claim that the prosecutor improperly commented on Brooks's right to remain silent. 695 So.2d at 179. The Alabama Supreme Court likewise rejected this claim. 695 So.2d at 188-90.
[5] On direct appeal, we rejected Brooks's claim that the prosecutor violated Batson. 695 So.2d at 180-81. The Alabama Supreme Court likewise rejected this claim. 695 So.2d at 190-91.
[6] Vinson raised the following issues in her appellate brief: (1) whether the prosecutor commented on Brooks's right to remain silent, (2) whether the prosecutor violated Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), (3) whether Brooks's trial counsel was ineffective for failing to present any evidence in mitigation, (4) whether the trial court's reasonable-doubt instruction was erroneous, and (5) whether the trial court erred in admitting DNA evidence.
[7] The hearing on the motion for a new trial reflects that defense counsel limited the testimony by Brooks's mother to prevent the State from presenting victim-impact evidence.
[8] The claims in the Rule 32 petition were merely statements of issues without any factual or legal support.